The second case today is No. 24-12819, Kevin Joyce vv. Forest River, Inc. and Freightline. Mr. Cousins. May it please the Court. This case is challenging an appeal with the District Court's conclusion that Mr. Joyce could not recover under Florida's Lemon Law because he failed to meet a statutory presumption. This particular presumption was Florida Statute 681-104-3AB. By doing so, the Court committed error because that's not a mandatory requirement for relief under the statute. The statute... I think... I think you're right. If you look at the laws of... If you look at the decisions of other state courts in states that have similar Lemon Law provisions, they all pretty much uniformly say that the statutory presumptions for the reasonable number of attempts is not mandatory and you can try to prove a reasonable number of attempts in some other way. So I think you're probably right about that. But in responding to the defendant's motion for summary judgment, Mr. Joyce raised the presumptions himself and said he was entitled to proceed under those presumptions. So why did the District Court make a mistake in analyzing the presumptions? Well, the presumptions are just one way to get down town. I know, but Mr. Joyce relied on the presumptions. So it's hard for me to see... I mean, you can disagree with the District Court's ultimate decision on the merits. I get that, but you can't fault the District Court for analyzing the presumptions when your client relied on the presumptions in his opposition to summary judgment. Okay. I could explain how the court's analysis of those presumptions was incorrect. Okay. Okay. So the presumption, if we speak of 681.104.3a, that language speaks to you have to have the vehicle in for a service at least three times. Then you've got to give notice, and then if the manufacturer exercises a filing repair attempt, the problem has to continue to persist. The position that the court took was that the vehicle had to be in four times, and that's actually incorrect. Well, three plus one is four, right? Three failures, and then you have to give them the opportunity to finally make it right, which is the fourth. Right. But they don't have to exercise that right. So if they don't exercise that right, they waive it. So then it will only be three repair attempts. So if the problem continues to persist. Sure, but you have to give them four opportunities. Right, which occurred here. I was going to say, I thought that the way I read the record, and maybe, I thought that there were at least four repairs. There was one in July 15th, one in September, then there was a later one, and then there was the fourth one, which was the one that dealt with another issue. It's a check engine light. A check engine light. Right. And just to understand, kind of taking a divergent path a second here, 681.104.3b focuses on days out of service. And when you read the record and you read the opinion by the district court, they do the math, and it adds up to more than 152 days. Well, I was going to ask about that, because from that time period that the RV was out of service, I mean, why didn't the presumption apply to that, the out of service time? It should have. The court just misunderstood it. I mean, this is a remedial statute that's been promulgated by the legislature to help consumers that buy vehicles that don't conform to their warranty. The manufacturer gets a great opportunity to conform. I mean, 60 days to conform a motorhome. Did it matter? I mean, I guess the other side is arguing that from March 9th of 2020 to November 10th of 2020, there was a tolling or a suspension of the Lemon Law because of COVID. I'm glad that was brought up. It's a misapplication of that mandate. It told the filing for consumers because consumers are having trouble on occasions and getting their repairs. But mind you, the manufacturers continue to manufacture vehicles, service vehicles, sell vehicles. So, a deeper dive into that. I mean, it didn't toll the time that the RV was being held for out of— No, not at all. Not at all. I was surprised to see that argument made. So, the statute says that the consumer may avail himself of the presumption. That's correct, Your Honor. But you don't have to avail yourself of the presumption. No, because— And I think what Judge Jordan was asking is, you relied on the presumption in the district court when the court was considering the motion for summary judgment. And now you're arguing on appeal that, well, there was another way other than the presumption that the consumer can demonstrate that, you know, the warranty. You know, he had—he gave the manufacturer enough sufficient time in order to bring the car within compliance with the warranty. There's another way to do it. But you didn't argue that in the district court. There is. We were responding to their motion for summary judgment, which focused on those prerequisites. And when we— You relied on the presumption. In the argument, they relied on the presumption. So, we responded back in saying the presumption doesn't hold. Right. And, of course, what's remarkable about the opinion of the court is when you go through it, when I did it, you know, piece by piece, it adds that the defect continues to exist. The court admits that. The court admits that it was in four times. The court admits that a defect notice was sent. And the court admits that there's a nonconformity. This is a liberal statute construed to help consumers. And if I could just take 15 seconds to speak about what Mr. Joyce went through. He buys his motorhome. On his way home, the headlights don't work. The windshield's leaking. His backup camera doesn't work. It's a 40-foot-long vehicle with a backup camera that doesn't work. He has various other issues. He's told immediately, and he calls in by one of the manufacturers, nameplate manufacturer, to take the vehicle to X place. He does it. They keep it for 56 days. And they tell him to drive it down back to Florida. He does it. They keep it for 56 more days. And then the vehicle's pushed over to Freightliner, where they try to repair issues to the chassis. Then, after all of that, he sends notice in February of 2022. Manufacturer takes his vehicle to Indiana for 22 more days. Then Freightliner takes it again. And they keep arguing that they haven't been given a final repair attempt. They have been. They've been given many repair attempts. They just can't seem to fix it. And remarkably, the district court, in its last sentence, says the defect still exists. Which defect do you think? Because you, Mr. Joyce, started out with a lot of defects in the RV, right? Yes, Your Honor. But as I read your filings in the complaint, some of those were taken care of during the first or second repairs, and some continued. Is that right? Right. So he had defects that don't count under the Lemon Law, interior living. Which ones that count continued all the way through and were never fixed in your view? Okay. Backup camera, that's one. Check engine light, which comes on. Manufacturers have their theory as to what it is, but if you're driving a vehicle and every time you take it to service, you turn the check engine light off and you pick it back up, it's on. That's a problem. You've got the windshield. So the windshield leaks as you're driving, right? So those are some top issues that he has with the vehicle. His steering wheel has been off center for some time, but, you know, he can live with that. But there's just a litany of things that have continued to plague this vehicle, and to no fault of his own, he's been dealing with it. And we believe that the statute provides for him to get relief based upon, now, you know, they say the argument of days out of service. Or if you skip that, reasonableness, and that's under 681-104-1A, 1B, 2A, and 681-109-58. And those statutes, those statutory references speak to that all the board has to do in 681-109-58 is find that there was a reasonable number of repair attempts. It doesn't define in the statute what reasonable is. So we've won cases with one repair attempt. Why? Well, the motorhome was overweight. How many times do you have to bring it back to prove that case? And the board found that that was proper. We found cases where a consumer's vehicle shut off on the highway. And those cases were litigated and said, how many times does the vehicle have to shut off on the highway? So that's why reasonableness, reasonable number of repair attempts is not defined in the statute. So it should go forward under these set of facts. And the facts, mind you, that we're dealing with that the manufacturer relied upon. The facts that the court relied upon. If you just take that order, that eight pages, and read it, you're amazed, at least I was, that I said, well, I'm preparing for this and thinking to pull things in. This one order gives me all the facts I need. You are not challenging the Moss-Magnuson claim on appeal, right, with regard to Freightliner. Your brief is dedicated only to the Lemon Law claims against the two defendants. I thought we mentioned the MagMoss issue, that the court relied on the dismissal facts for the Lemon Law to be the same for MagMoss. And I think that's error, too, because clearly MagMoss claim requires even a lower burden than the Lemon Law claim. I mean, you've got to find that the manufacturer didn't conform the vehicle to its warranty. And I think if Freightliner is still responsible for the chassis and the check engine light is on, then that's a problem. That still exists. I mean, I read in reading your brief, I didn't see an argument about that claim. But you can take a look while your opponent is speaking and then you can let me know when you come up for rebuttal where you think you raised a challenge to the dismissal of that claim as well. Thank you. OK, thank you very much. You saved your full time for rebuttal, Mr. Cousins. Thank you. OK, Mr. Glenn is first. Yes. May it please the Court, Your Honors. John Glenn on behalf of Forest River Incorporated. To begin, Your Honors, we have two separate parties here. Forest River is the party that manufactures the coach that's put on the chassis. Freightliner is the chassis manufacturer. Specifically under this particular act, living facilities are not included in the calculations for days out of service and are not included in the Lemon Law. A consumer that wants to challenge something related to living facilities has other avenues of relief. Right, but the backup camera was something that was, you know, brought up multiple times in July, in September, and then the third time. And then I don't have the fourth time in front of me. I mean, that seemed to never have been repaired. Based upon the record evidence before the District Court of Appeal and Mr. Joyce's admissions, the backup camera was brought in twice for repair. And the third time was when it was taken to Indiana to the manufacturer's plant to repair the backup camera. Otherwise, there's been two repair attempts and then the final. And the arbitrator, this is an appeal from the Lemon Law Board decision, the arbitrator found, based upon the evidence, that there wasn't a sufficient number of repair attempts. And that, from his perspective, they were repaired, but to the extent they weren't, they allowed us to go out and repair those items because the notice was premature under the law. From our perspective. From your perspective, how many days was the vehicle out of service for, let's say, the three purported defects that Mr. Cousins points to, the backup camera, the check engine light, and the windshield leak? How many days was the vehicle out of service for repairs on those three items? It was under 60 days. I don't have the specific number, but it was, I believe, my recollection and I should have been prepared for that point. But it was definitely under 60 days based upon the record evidence. Did somebody provide that calculation to the District Court through a declaration or someone's got to read the documents themselves and then count up the days? How do I get that into the record? That's the issue before the Court and was before the Lemon Law Board, that it's the burden of the consumer to differentiate those days out of service for living facilities versus those items that are actually covered under the Lemon Law. And the Board found that that wasn't done, and the District Court also found that. And if you look at the record evidence, there is no — But why do you say that it's his burden and not a presumption that it actually has occurred if there's been more than 60 days, that the RV has been out of service? Because in any action where you've got seeking affirmative relief, it would be the person seeking affirmative relief, obviously, that it has the burden to prove those issues. And specifically with regard to Lemon Law claims, they would have to carve out those days out of service that would apply for this particular act. Now, if they were bringing a Magus and Moss claim, that wouldn't apply. This is a limited statute as it relates to the living facilities, and that's mainly what my client manufactures here. So in that regard, when you're bringing the claim, it's the claimant's burden to bring. Why can't the consumer satisfy the standards set forth in Section 2A of the statute? Section 2A of? Section 2A, the way I read it, you can get a refund if the manufacturer has failed to bring the nonconformity within the requirement of the warranty after a reasonable number of attempts. And then you get your refund within 40 days after that. Okay, under the law. So what that seems to do, it seems to me, is to protect the consumer when there's a single prolonged repair, right? If you read the statute itself, under 681.104.1A, it's not until after three repair attempts that a consumer can give written notice. There's a bright line provision in the statute, and it's a simple statutory construction provision. It's not simply that you can have one repair and that's enough. That would go to the days out of service argument, that if it was one repair and he had over 60 days. Right, but 2A just says after a reasonable number of attempts, it doesn't articulate what the reasonable number of attempts has to be. It does not, but it certainly is dictated under 681.104.1A, which gives you the bright line standard that you can't give notices. But it doesn't reference it. I mean, normally the Florida legislature, if they want to, they reference the statute. They know how to reference the statute above or below, and they didn't do that there. In practice, before the Lemon Law boards, if the consumer doesn't have the requisite number of days out of repair attempts, the application will be rejected. So what if there's just one attempt to repair and the manufacturer keeps the RV for a year? Then they would qualify out of the days out of service, and then you would still have to provide notice in that final opportunity to repair. But again, it's the consumer's obligation to present and carve out for specifically things that are not related to the living facility. And that was what the board found, and then the district court found the same thing. But I think what this consumer is arguing here is that the presumption of Section 3, where you get 3 plus 1 attempts, or 60 days, that's not mandatory. And the district court seemed to think that it was mandatory. I believe— And if it's not mandatory, then there's a genuine issue of fact here. It is mandatory because there's nowhere in this Act that says that you can bring a claim after—you can provide notice to the manufacturer after one repair attempt. Well, why does the statute in Section 3 use the word, quote, may avail himself of the presumptions? Well, at that point, it would be presumed to be a lemon if you've established those facts. But you still have to give—under the plain meaning of the warranty, if you look back to the UCC, there's always notice and an opportunity to cure. You just don't get your money back for a product simply because you complained about it. You do have to give notice and give that opportunity to cure. And so that's a provision under the law that— Well, the law says after a reasonable number of attempts, though, right? Right. And you would still, after those reasonable number of attempts, have to give notice under the law. Because if you don't give notice and there's no opportunity to cure, it goes back to the old UCC provision, notice and the right to cure. There is a warranty, and the warranty doesn't say that the vehicle is going to be a perfect vehicle. It says that it gives you the right and opportunity to cure that vehicle. There's evidence of notice in this record, though, right? There is evidence of notice when they filed the motor vehicle defect notice after two repair attempts that Mr. Joyce said, I took it in twice for these things that are noted that would be covered. And that's in the record. When you talk about the notice, when you look at 681-104-B, which is the one that talks about notice, there it says that the motor vehicle is out of service by reason of repair for one of more nonconformities or its authorized service agent for a cumulative total of 15 or more days. The consumer shall notify the manufacturer in writing. So that's only 15 days. That doesn't say 60 days. Sixty days goes to the statutory presumption. So here, I mean, it clearly was out of service for more than 15 days, right? It wasn't established for which items it was out of service for. And this is mainly, the main problems were living facility items. How do I figure that out from the record? I mean, I need to go into every service document and then tease out. Those documents aren't going to tell. In a normal case, if a vehicle is in for four different problems, and the dealer, the service agent, keeps it for two weeks to fix all four, they're not going to tell me in the invoice how much time was attributable to each one generally. They're just going to say, here are the four items. They're either under warranty or not under warranty. You owe nothing or you owe labor or whatever, but they're not going to tell you, oh, we spent two and a half days on this. We spent three and a quarter days on this. We spent five days on this. We had to wait six days for this part to come in. They're not going to tell you that. So how do I figure out the number of days out of service for a particular alleged defect in this record? Again, that would be based upon, it would be the consumer's burden, and that's what the discovery purposes are for. He didn't submit a declaration or wasn't deposed where he said the vehicle was out of service for more than 60 days due to this defect? My recollection of the record is that he could not calculate the different days out of service. And so it's his obligation, the board, the Lemon Law Board found that. But that's not true. So he did say, I turned in the vehicle, let's say, in July 15th, okay, for that repair period, which was headlights, backup camera, and the living area features, which I understand doesn't count, but that was that repair. And he said, I did this, and then I picked up the car on X date. I mean, he specifically testified when he picked it up because then he drove it to Florida. So that's not true. That's true, but then the issue becomes, well, which repairs are covered under the Lemon Law versus those things that are living facility items, and it's his burden. And the board found that it was his burden to differentiate those days out of service versus things that are simply for living facility items. All right, let me ask you this. Hopefully this one you can say because there's enough in the record for you to be able to know the number, or at least figure it out, and then you can come back and tell us. Regardless of cause and regardless of defect, for how many days was the RV out of service at an authorized service facility, either with Forest River or with Freightliner? Total, regardless of cause, in or out of the Lemon Law, doesn't matter. How long was the vehicle out of commission? Well, that's subject to debate, certainly, but based upon the plaintiff's standard. Give me your perception of… My perception was…  Let me see. I don't want to put you on the spot. I have the number somewhere. That's a tough question to ask you when you're there standing. If you can figure out the number from your perspective, just the total number, not what's attributable for Lemon Law purposes or not, not what's traceable or not, just total number, which is a starting point to figure out. The reason I'm asking you is this. If the vehicle, in a hypothetical situation, if the vehicle were out of commission total for 52 days for all sorts of assorted potential issues, you wouldn't get the 60-day presumption no matter what the tracing was. Right. So I want to use it as a starting point. I think I stated it in our brief. I'll take a look. The one issue, though, here is that there's a debate. Mr. Joyce lacked his vehicle at the dealer, and he's contending all those days were days out of service. The manufacturer had no idea it was at the dealership. So from our perspective, he abandoned the dealership, and he's taking those as days out of service. That's okay. So you can—you're not required to accept his version. So slice out that period of time, and then I'll ask you when your co-counsel is done, how many days you think the vehicle was totally out of service. He says in his brief he calculates 81 out-of-service days attributable to Forest River and 46 days attributable to Freightliner. Right. And so, I mean, we look at all the facts and the inferences in the light most favorable to Joyce. So— I mean— That's what the— Shouldn't we, I mean, accept that for the purpose of summary judgment? From our vantage point for the covered defects, no. Right, but this seems to me, and I speak only for myself, like a genuine issue of material fact, that, you know, a jury needs to determine what exactly were the out-of-service dates, and that's why you have a jury trial. Well, in any event, thank you very much. When Ms. Borland is done, you can just step up to the podium and tell us from your perspective what you think the total number of days out of service are, and we'll use that in figuring out how to resolve this case. Thank you. Thank you. Ms. Borland. May it please the Court. Marie Borland from Hillward Henderson in Tampa on behalf of the Appali Freightliner Custom Chassis Corporation. So there's obviously a difference between the two manufacturers with regard to out-of-service days, you know, repair attempts, et cetera. You do more of the chassis or the— Yes, so it's undisputed that the only defect attributable to Freightliner was a check engine light. So our position is just very plain based on the language of the statute, and the statute is very clear that the consumer—this is 681.103— the consumer must report the problem to the manufacturer or an authorized service agent. The plaintiff has admitted he's never once spoken to anybody at Freightliner, and there's no authorized service agents. Lazy Days wasn't. The Chichester facility wasn't. Forest River wasn't. So he doesn't even get past the 681.103 hurdle. So when the check engine light was being serviced in July, right, for the first time— No, I'm sorry, Your Honor, that was November of 2020 is the first time it was delivered by someone else. No, but I thought in July there was a check engine light that was also at issue, or was at a backup camera. Maybe that was a backup camera. It's undisputed that there were three repair attempts made by Freightliner, but, again, not brought to Freightliner by the plaintiff, brought to Freightliner by other people. But there was one in November of 2020. And, Your Honor, this is then the plaintiff's amended statement of material facts, the response to Freightliners. So even accepting what he said, and the court, of course, struck his response, but even if you accept his response, it's undisputed that there were only three repair attempts made by Freightliner, again, brought to Freightliner by someone else. One was in November of 2020. There was another one in March of 2022, and a third one in April of 2022. But under the statute, and, you know, the court has discussed the way it's written, so subsection 1A says, after three attempts, and it's very clear and it's very specific, after three attempts have been made to repair the same nonconformity, the consumer shall give written notification, which is the defect notice, to the manufacturer in a final attempt to cure the nonconformity. And then the manufacturer has 45 days commencing upon the delivery of the motor vehicle to a designated repair facility by the consumer to conform the vehicle to the warranty. So here he served the defect notice after the first repair attempt. So already, again, he's failed to comply with the statute. So after... The problem is that subsection 1A doesn't have any consequences, except for not having to give the entity a final chance if they don't respond to his notice. There's no other consequence to this. Like, what's the consequence of the consumer not complying with 1A? The consumer cannot avail him or herself of the statute of the Lemon Law. Where does it say that in the statute? Well, it doesn't say that in the statute. It's presumed that if you bring a statutory claim, it's presumed that you must comply with the statute in order to avail oneself of the statutory claim. Right, but then there's another provision that says you can try to get a refund or a replacement after a reasonable number of attempts. And then there's a provision that says that a reasonable number of attempts is presumed to exist when you have three. Where does it say that you can get a refund or a replacement simply by a reasonable number of attempts? Because... Tell me the... I'm looking at it now. What's the provision that says you can get the refund? 2A, right? Right, so statutes we read in order. Every provision has meaning, so we don't read statutes in isolation. So the legislature started with Step 1. Step 1 is... 2A says... Right, 2A says... If the manufacturer or its authorized service agent cannot repair or correct any nonconformity after a reasonable number of attempts, and then it goes on to say you get the replacement or a refund. Correct, and in reading statutes as a whole, 2A to me obviously relates back to 1A. So you get three attempts, you get a defect notice, and then the manufacturer has a final opportunity to perform a repair, and then the manufacturer has 45 days and the consumer has to bring the vehicle. Now, if after that defect notice... But then 2B says that a reasonable number of attempts is... I'm sorry, 3, not 2B, sorry, 3. It says it is presumed that a reasonable number of attempts have been undertaken if and during the Lemon Law either there have been at least three times. Correct. That's a presumption, not a requirement. Right, so it seems superfluous because at least in 1A, 1A says this is a matter for the legislature. If it is the way the statute is written, we have to go with the way the statute is written. The courts have to go with the way the statute... This is a legislative issue. The legislature in the very first provision of this statute said, spelled out very clearly, and this is what the arbitrator found and this is what the district court found. Everybody read the statute the same way. You get three attempts to make a repair of the same nonconformity, which in the case of Freightliner, we would argue there was never even three attempts for the same nonconformity. But after that, there's a shall. The consumer shall give written notification, which is the defect notice, to allow the manufacturer a final attempt to cure the nonconformity. The manufacturer has 45 days upon the delivery of the motor vehicle for the repair, which never happened, and then you go down. Well, B is if it's the out-of-service days. Then you go down. So 2A read in context to me and to the court and to the arbitrator clearly means that after that, after you've complied with 1A, that is where you have the determination you cannot conform the motor vehicle to the warranty. You've been given three attempts. Like you said, three is superfluous, and you told us we have to give meaning to every provision. Well, we have to read specific over general. So the legislature, in the very first provision of the statute, very specifically said, you get three attempts, a defect notice, and a final opportunity to repair. We cited the BMW v. Singh case too. The courts say across the board and throughout this section, you always have a final attempt to repair after the final opportunity to repair. So, again, if you read it in context, cannot would refer back to 1A. 2A would refer back to 1A. Okay, we can now make a determination that you cannot conform this vehicle to the warranty because you've been given three attempts to repair the exact same nonconformity. You were given a defect notice, and you were given a final opportunity to repair, and you still couldn't do it. But there isn't another avenue that's based on the number of days the vehicle has been out of service? There is another one. But, again, as to Freightliner, it's undisputed that Freightliner, we say 18 days. Plaintiff's experts said 21. That discrepancy was based on a repair order. And the question, I think, was raised, how do you ever know? Well, you have repair orders that very specifically do list the repairs that are performed, so you can demonstrate it that way. But here it's undisputed that Freightliner, this is a check engine light, which we would say is not even, well, it's not even a nonconformity, but even if it were, it's an indication of something else. So it's not even an illuminated check engine light. We've cited case law, it's not even the same nonconformity. But indulging in every fact in the plaintiff's. Well, it's a nonconformity because it has a sensor problem, correct? Correct. I mean, it's not turning on because there's an issue with the bulb. Right. It's a sensor that is not operational. Well, it's all kinds of different things. So in the Polson case, there were check engine lights that illuminated the Polson v. Chrysler case we cited to the court. And the court said it's not the same nonconformity because it's a sign of many different things. The point of the check engine light is if there's a problem with the car. But if the check engine light is always on, then you don't really know if there's a problem with the car, correct? Correct, correct. So we're not going to argue. Safety issue. So for the sake of argument and indulging every fact in the plaintiff's favor, we would say assuming a check engine light is itself a nonconformity, we don't believe it's the same nonconformity. But even if, in this case, the check engine light was the same nonconformity, we only had it three times. And it wasn't even delivered to us by the plaintiff. He admits in his deposition that he never once communicated with Freightliner. So you've got two manufacturers here. Correct. Which makes this case a little different than your average limit law case. And so why can't we fairly attribute Forest River's repair attempts to Freightliner? Because the statute is written in the singular. It says as to each manufacturer. It doesn't say manufacturers. So that, and there's not a single case that has ever, and it wouldn't really make sense because we manufactured the chassis. Why should we be held responsible for someone else who manufactured something else? I mean, that is fundamentally unfair, if not contrary to the statute. So is the vehicle transferred in the effort to have repair attempts between Freightliner and Forest River themselves, transferred themselves back and forth? You're saying was it transferred? It was, my understanding, and I think from the record, is that the only time it ever ended up at Freightliner, which was the only authorized repair facility, was from Lazy Days. So I'm not sure where it was. All I need to know for my client's purposes is how many times did it go to Freightliner and for how many days. And it's undisputed it went to Freightliner three times for, we say 18 days, they say 21. But either way, it's substantially less than the 60 out-of-service repair days. So when he takes the vehicle back in, he knows whether or not it's at Freightliner or Forest River? He's never taken the vehicle in. That's why I say he doesn't even get to 104. He never even gets there, at least not as to Freightliner because he never communicated with Freightliner. How did the vehicle get to either one of the two? How did the vehicle get to Freightliner? I believe Lazy Days, which is not an authorized service provider. Who took it to Lazy Days? I'm sorry? Who took it to Lazy Days? I don't know who took it to Lazy Days. Freightliner didn't. Are you honestly sitting here? Mr. Joyce didn't testify about that, wasn't asked about that? I don't honestly. How did it get to Lazy Days? He drove it. To Lazy Days from New Hampshire. Yes, he drove it to Lazy Days. But under the statute, Lazy Days is not an authorized service provider. Okay, but somehow it got to Freightliner, correct? Correct. Not by the plane, if Your Honor, who was supposed to have delivered it. Does the statute say it has to go by the plane, Tiffany? Yes, it does, Your Honor. It got to you eventually. Hey, easy. Let her finish. I'm sorry. You're going to get a chance to answer. So, it says, commenced upon the delivery of the motor vehicle to the designated repair facility by the consumer. Lazy Days is not the consumer. But we're not quarreling over that, Your Honor. We're saying, indulging every fact in the plaintiff's favor, that it was at a Freightliner facility. There were three repair attempts. It was either 15 or 18 days out of service. At the end of the day, he never even authorized anyone to deliver this vehicle to Freightliner to perform the final repair. And I just want to emphasize. Did Freightliner accept the RV into its premises? Freightliner, I believe, performed the final inspection at Lazy Days, where it was. So, the answer is, yes, you did accept the RV onto Freightliner's premises. Yes, you took possession of the RV. I'm not sure I understand Your Honor's question about took possession of the RV. We performed an inspection, the statutory inspection. It's very simple. It's not a complicated question, which is, did your client take possession? Did someone who was an employee of Freightliner take the RV, take possession of it, drive it into the service area to repair it? No, they did not, because they couldn't. They went to Lazy Days to perform the inspection, told the plaintiff. And this is undisputed. There is one thing wrong with this vehicle attributable to Freightliner that the plaintiff is asking for all of his money back, and it is a DEF sensor. And they've admitted that our expert, the person who inspected the vehicle, said, we found in October of 2022, the only thing left is a DEF sensor. This is what we can do to replace it. Radio silence all the way for seven or eight months until arbitration. So, no, we didn't take possession of the vehicle. We didn't perform the repair. We asked for permission and authorization to perform the repair. So, on the side of Freightliner, we're being asked to contribute to a refund of a vehicle, of an expensive vehicle, when we have asked multiple times, could we please just replace this DEF sensor, which you admit is the only defect attributable to Freightliner left. So, I apologize if I sound a little frustrated, because I've been reading the statute by its clear language. I know, but everybody thinks that the statute is clear. Well, to me, this one is. I can't tell you the number of statutory interpretation cases we have here, where every lawyer, lawyers on different sides say, listen, this is easy. Just apply the plain meaning of the text. We win. We're out of here. You can write this in a paragraph. The other side gets up and says, just apply the plain meaning. Just a text. It's easy. Write a paragraph. We're out of here. It's not always that easy. For example, jurisdictions with similar, although not identical, lemon laws have held, I think without dissent, without anybody disagreeing, that the presumptions set forth in a lemon law like this one are not mandatory and exclusive, and you can try to show a reasonable number of attempts that are lower than the number set for the presumption. That may be hard for a plaintiff to do, but it can theoretically be done. So, the statutory language is not all that clear, and there are very few Florida cases on the issues presented here, very, very few. And none of them speak to the issues we're discussing today. Well, Your Honor, I understand your point. I've been practicing for over 30 years and obviously have read a lot of statutes. In this particular case, as it relates to Freightliner and the one defect and the undisputed facts, and I mean facts that the plaintiff has conceded, I would say no one's going to contest that the defect was a check engine light. No one will contest that the only remaining defect attributable to Freightliner is a DEF sensor that we have offered to repair. And no one can contest that without regard to the presumptions, assuming you don't have to prove the presumptions, you do have to give the manufacturer a final attempt to perform the repair. And we have offered, and it's on this record, multiple times to repair the DEF sensor. So on that fact alone, without regard to differences of opinion and how to construe the statutory language, and this is what the district court has said, the plaintiff is not being left without a recourse. We are still being ordered to perform the repair, and that's what we would like to do. So we'd ask the court to affirm as to Freightliner. Thank you. Thank you very much. Okay, Mr. Glenn, tell me how many days out of service from your perspective. In this court. So I handled the underlying arbitration proceeding, and from there we included, it was in a total of two times. Each day was a day for each repair. And then on the final repair, when it went to Indiana, it was in for 22 days, which included both living and non-living facility items. So 24 days based upon my notes from the arbitration proceeding, but in any event, less than 60 days. And again, this is a limited recourse for this consumer as it relates to my client because largely they manufacture the living facilities and they do have a other avenue of relief through Magnuson Moss or breach of warranty or any other type of cause of action. So that's from our perspective. Thank you very much. Thank you, Your Honors. Okay, Mr. Cousins. So let's start with the Magnuson Moss claims. Did you raise a challenge to the summary judgment on those claims in your initial brief? We did. Can you tell me where? Because I can't find it. Maybe you did. My reading of the brief was all Lemon Law, Chapter 681 and nothing else. Right. So the Magnuson Moss is like the mommy of the Lemon Law and Lemon Law is like the child. So if Forrest River, I should say Freightliner, wins under the summary judgment by the fact that the court found that they conformed the vehicle back to its warranty or they weren't given a reasonable number of repair attempts, it's the same argument that we'd make against Magnuson Moss. But you're right. It's not specifically fleshed out in the briefs that we prepared because we were looking at it from the perspective that the court dismissed it because they felt like we weren't able to prove a reasonable number of attempts.  So everything rises or falls on the Lemon Law arguments. If you win on those, then you think you may be able to get relief on the Magnuson Moss claim. But if you lose on the 681 Lemon Law claims, then everything is gone. Right. And if you think about it under Magnuson Moss, the burden, I think, is lower. And it sounds strange because Magnuson Moss is federal and it's a big deal, but Lemon Law is so specific in what you've got to do, even with the reasonableness standard. So under Magnuson Moss, I think that it would be hard for the manufacturer to say that they've cured the defect. It's interesting that they say they keep asking, it's a straight line, they keep asking for a final repair attempt. But let's look at the context of when they've asked. They said that they didn't get a final repair attempt opportunity. They got a defect notice in February. And the court order that dismissed our claim points to them receiving a defect notice. Thereafter, in February, I'm sorry, in March, March 3, 2022, according to this record, they performed a repair attempt, which would be considered the final because they got notice and then they get to do a final. Then they had another repair attempt on April 21, 2022. Another repair attempt after the final. And what's interesting is on both occasions, the check engine light was on. They said they fixed it. They give the vehicle back to Lazy Days for my client to pick it up. My client goes to pick it up and he turns the key, check engine light's on. And so now they're stating that, oh, well, we've not been given a final opportunity. Well, the statute speaks to reasonableness. How many times do you get to try to fix a simple check engine light issue that they're saying? They're saying it's real simple, but yet they can't fix it. And so that kind of begs the issue. At the end of the day, this is a consumer protection statute. It's driven by facts as it relates to defects that you might experience. We're not asking for the court obviously to enter a judgment in our favor. We're just asking for a fair day in court. An opportunity to bring to a jury evidence that's clear. And again, if you look at the order that dismisses this case, it's a textbook for why the case should exist. It has all the elements of all of the claims and it leaves us at the end. I'd be remiss to not say it again, but they say that, where is it? Anyway, the point is at the end, the very last sentence in the order, it says that the defects still exist. Now, we speak about the arbitrator below that caused all of this. In his ruling, he ruled that the vehicle needed a repair. So from the beginning, the vehicle needed a repair. And now we're back again with the circuit court saying it needed a repair. So that means it's not repaired. I mean, that's the best evidence that we have that this case should get to a jury. It's a great trier fact for them to have an opportunity to listen to how and when water wear occurred. And whether or not the manufacturers were able to repair this vehicle within a reasonable number of repair times. And then for definition of days, it's in the statute, Your Honors. You can see what it means with days. It's a little disingenuous to say that the vehicle was only in one day when it was away from the consumer for 56 days. I know, but part of the entire block of time was for repairs that are not covered by the Lemon Law, right? Like the living facilities. Well, that's what they claim. Is that true or not true? Well, on the repair order itself, it shows items that are touched off, but it doesn't show time in and out for each of the items. I know. That's the difficulty of figuring out the number of days out of service for a covered nonconformity. But you don't have to, though, because the definition speaks to a day out of service is the day that the vehicle has been brought in for a repair inspection. But it has to be for a nonconformity under a warranty. Living facilities are not covered. Let me give you an example. Florida courts that actually apply this, like the Lemon Law Division, the arbitrators, they don't cut those days out. So if I bring my vehicle in for an engine problem on day one, they have to order an engine. In the meantime, they fix my stereo, my toilet, and my RV, right? Until that engine gets put in, all of those days count. Of course, because the vehicle is being held because of the engine. Right. So in this case, if you think about it, the defect, the check engine light, the backup camera, every time they returned it, it went back. It was still a problem. So how could they say that it wasn't there the whole time for those repairs? They didn't fix it. Okay. All right, Mr. Koza. Thank you very much. Thank you, Your Honors. Thank you all very much. We appreciate it. Thank you.  Thank you.  No problem.